1

2

3

4

5

6                              UNITED STATES DISTRICT COURT

7                                    DISTRICT OF NEVADA

8                                              * * *
                                                 )
9    UNITED STATES OF AMERICA,                   )
                                                 )
10                  Plaintiff,                   )         3:12-CR-0058-LRH-WGC
                                                 )
11   v.                                          )
                                                 )         ORDER
12   F. HARVEY WHITTEMORE,                        )
                                                 )
13                  Defendant.                   )
                                                 )

14

15          Before the court is defendant F. Harvey Whittemore's ("Whittemore") motion to suppress

16   evidence. Doc. #31.[1] The United States filed an opposition to the motion (Doc. #41) to which

17   Whittemore replied (Doc. #48).

18          On April 3, 2012, the court held an evidentiary hearing on Whittemore's motion to

19   suppress. Doc. #69. At the close of the hearing, the court denied the motion to suppress and noted

20   that a written order would follow the court's findings and comments. This order follows the court's

21   decision.

22   **I.      Facts and Background**

23          In 2007, defendant Whittemore allegedly promised to raise $150,000 in campaign

24   contributions for a candidate's re-election campaign for the United States Senate. To make good on

25   his promise, Whittemore allegedly used his employees, various family members, and their spouses

26   _____

          [1] Refers to the court's docket number.

1   as conduit donors to the candidate's campaign in order to bypass the individual campaign

2   contribution limits under federal law. Whittemore then allegedly transferred the combined

3   contributions to the candidate's campaign committee.

4         In keeping with federal law, the campaign committee filed a required contribution report

5   with the Federal Election Commission ("FEC") on April 15, 2007. This report allegedly contained

6   false information identifying Whittemore's employees and family members, rather than

7   Whittemore himself, as the source of the campaign funds.

8         At the time Whittemore allegedly engaged in these activities, he co-owned and managed

9   Wingfield Nevada Group ("WNG"), a real estate development company, and maintained a private

10   executive office, conference room, and storage area at WNG's Redhawk location. In early 2010,

11   Whittemore was removed as manager of WNG by his partners and co-owners, the Seenos.

12   Eventually he resigned his positions as both an owner and executive of WNG, whereupon he was

13   locked out of the WNG offices.

14         Towards the end of 2010, a WNG employee boxed up all property, papers, and items from

15   Whittemore's office, conference room, and storage area. Thereafter, these 81 boxes of assorted

16   items were delivered to the offices of Pisanelli Bice, a civil litigation law firm located in Las

17   Vegas, Nevada, which was representing the Seenos and WNG in ongoing civil litigation against

18   Whittemore.

19         While at the offices of Pisanelli Bice, the 81 boxes were inventoried and copied in the

20   process of determining whether Whittemore had misappropriated WNG company assets. During

21   this inventory, WNG's attorneys discovered evidence of possible violations of federal campaign

22   finance laws. Attorney Richard Wright ("Attorney Wright"), representing WNG and the Seenos,

23   initiated a meeting with FBI agents in Las Vegas to report the discovery of the evidence.

24         On November 29, 2011, FBI Special Agent April French ("Special Agent French"), on the

25   invitation of Attorney Wright, visited the offices of Pisanelli Bice and examined and reviewed two

26   binders of documents identified and supplied by Attorney Wright. In early December 2011, as a

2

1    result of Special Agent French's review of the presented materials, the United States initiated a

2    Grand Jury investigation into Whittemore's campaign contributions. As part of that investigation, a

3    Grand Jury subpoena was issued for the two binders of documents on December 9, 2011.

4        While the Grand Jury investigation was underway, WNG's attorneys continued to inventory

5    the remaining boxes of items. On March 12, 2012, Attorney Wright again contacted the FBI and

6    provided a detailed inventory of the 81 boxes of items. On March 13, 2012, Attorney Wright

7    invited Special Agent French to review any of the identified materials at the Pisanelli Bice offices.

8    From March 14, through March 21, 2012, Special Agent French reviewed some of the materials

9    including a book about campaign finance law co-authored by Whittemore and a letter of thanks

10    from the Senator to whom Whittemore made contributions in 2007. On March 21, 2012, another

11    Grand Jury subpoena was issued for those materials.  Those materials were delivered pursuant to

12    the subpoena shortly thereafter.

13        On June 6, 2012, the Grand Jury returned a four (4) count indictment against defendant

14    Whittemore charging him with: (1) making excessive campaign contributions in violation of

15    2 U.S.C. § 441a(a)(1) ("Count 1"); (2) making contributions in the name of another in violation of

16    2 U.S.C. § 441f ("Count 2"); (3) false statement to a federal agency in violation of 18 U.S.C.

17    § 1001(a)(2) ("Count 3"); and (4) false statement to a federal agency in violation of 18 U.S.C.

18    § 1001(a)(2) ("Count 4"). Doc. #1.

19        During this time, the civil litigation between Whittemore and the Seenos continued. In

20    August 2012, Whittemore filed a motion for return of property in the state court proceedings

21    identifying the 81 boxes of materials. On September 19, 2012, WNG filed an opposition to the

22    release of the property. On October 9, 2012, a hearing on Whittemore's motion was heard by the

23    state court judge, Judge Gonzalez. At the hearing, WNG Attorney James J. Pisanelli ("Attorney

24    Pisanelli") commented that he had instructions from the FBI to maintain the 81 boxes of materials

25    and that the materials were under "lock and key" and could not be turned over because of an FBI

26    subpoena. Ultimately, Judge Gonzalez, recognizing that certain items were personal in nature and

1   also subject to attorney/client privilege, ordered the return of all 81 boxes of materials in their

2   original condition.

3          Whittemore filed the present motion to suppress evidence on November 9, 2012. Doc. #31.

4   On March 21, 2012, the court heard oral argument on Whittemore's motion. Doc. #60. After the

5   hearing, and having considered the arguments of counsel, the court ordered a further evidentiary

6   hearing. Doc. #61. The court was concerned "with the factual basis for statements made by non-

7   party attorney James J. Pisanelli to the Eighth Judicial District Court in July, September, and

8   October 2012, that relate[d] to his firm's resistance to turning over eighty-one (81) boxes of

9   property to counsel for Whittemore." *Id.* Thus, the court ordered an evidentiary hearing to establish

10  "the factual history of the sequence of events in March 2012, that lead to the second Grand Jury

11  subpoena." *Id*.

12         On April 3, 2012, an evidentiary hearing on Whittemore's motion to suppress was held.

13  Doc. #69. At the evidentiary hearing, the court heard testimony from Attorney Wright, Attorney

14  Pisanelli, and Special Agent French concerning the events that surrounded and led to Special Agent

15  French's second review of materials at the Pisanelli Bice office and the subsequent Grand Jury

16  subpoena. This order follows that factual history.

17  **II.     Legal Standard**

18         The Fourth Amendment to the Constitution of the United States provides that: "[t]he right

19  of the people to be secure in their persons, houses, papers, and effects against unreasonable

20  searches and seizures, shall not be violated and no warrants shall issue but upon probable cause,

21  supported by oath or affirmation, and particularly describing the place to be searched, and the

22  persons or things to be seized." U.S. Cons. IV.

23         Pursuant to Rule 41 of the Federal Rules of Criminal Procedure, "[a] person aggrieved by

24  an unlawful search and seizure of property or by the deprivation of property may move . . . to

25  suppress evidence in the court where the trial will occur." FED. R. CRIM. P. 41(g)-(h). Property,

26  ///

1  under Rule 41, includes "documents, books, papers, and other tangible objects, and information."

2  FED. R. CRIM. P. 41(a)(2)(A).

3  **III.    Discussion**

4      In his motion, Whittemore argues that the March 2012 review of materials by the FBI at the

5  offices of Pisanelli Bice was conducted without a warrant in violation of the Fourth Amendment.[2]

6  *See* Doc. #31. Specifically, Whittemore argues that attorneys Wright and Pisanelli were working as

7  agents of the government during their internal inventory of the boxes and therefore, their search of

8  the documents was not a "private search."

9      At the outset, this court recognizes that the Fourth Amendment protects against

10  unreasonable intrusions by the government, but does not protect against the conduct of private

11  individuals. *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971); *United States v. Sherwin*, 539

12  F.2d 1, 5 (9th Cir. 1976). As such, "evidence discovered in a private search is not subject to

13  exclusion for failure to obtain a search warrant" or otherwise comply with the requirements of the

14  Fourth Amendment. *Sherwin*, 539 F.2d at 5-6.

15      The test for whether the Fourth Amendment applies to a private person is whether in light

16  of all the circumstances of the case, the private person must be regarded as having acted as an

17  instrument or agent of the state, when providing the contested evidence. *Coolidge*, 403 U.S. at 487.

18  "A private person cannot act unilaterally as an agent or instrument of the state; there must be some

19  degree of governmental knowledge and acquiescence." *Sherwin*, 539 F.2d at 6. "In the absence of

20  such official involvement, a search is not governmental." *Id*. Moreover, "once a private search is

21  completed, the subsequent involvement of government agents does not retroactively transform the

22  original intrusion into a governmental search" governed by the Fourth Amendment. *Id*.

23  ///

24

25      [2] In his motion, Whittemore originally challenged both the initial November 2011 review and the March 2012 review by the FBI. *See* Doc. #31. However, at the initial hearing on the motion, Whittemore dropped his challenge to the FBI's initial review of materials in November 2011. Therefore, this order only concerns the

26  March 2012 review.

1    After a thorough review of the testimony of the witnesses at the evidentiary hearing, the

2   court finds that there is no evidence to suggest government encouragement, government instigation,

3   or government participation in the inventory of Whittemore's effects which ultimately led to the

4   discovery and presentation of the challenged evidence to the FBI. The evidence Whittemore seeks

5   to suppress resulted from a wholly private search that was conducted by representatives of WNG

6   during the course of ongoing civil litigation and which was voluntarily provided to government

7   agents for review and subsequent Grand Jury subpoenas. Thus, the court concludes that the FBI's

8   March 2012 review of materials at Pisanelli Bice was not a violation of Whittemore's Fourth

9   Amendment rights.

10    Initially, the court finds that the facts of the instant action fall squarely within the Ninth

11   Circuit's decision in *United States v. Sherwin*. Here, as in *Sherwin*, prior or contemporaneous

12   government involvement in the private search was totally absent. Both attorneys Wright and

13   Pisanelli testified that they did not receive any instructions from the government to conduct the

14   inventory of Whittemore's effects. *See e.g.*, Doc. #70, Pisanelli Testimony, p.18 l:24 - p.19 l:2

15   ("Q. So no one from the government instructed you to complete this inventory; is that correct?

16   A. I don't have any recollection of any instruction like that."); *see also*, Doc. #70, Wright

17   Testimony, p.105 l:23-25. Rather, as testified by Attorney Pisanelli, the purpose underlying the

18   inventory of the 81 boxes of materials was because they were "part of the assemblage of a greater

19   body of evidence to be reviewed [and] analyzed in connection with the civil litigation." Doc. #70,

20   Pisanelli Testimony, p.10 l:21-23. Further, Pisanelli testified that it was his intent to preserve and

21   inventory this evidence just like all other evidence in the civil litigation. *Id*., p.14 l:16-21. Thus,

22   there is no evidence that the review and inventory of the 81 boxes conducted by attorneys at

23   Pisanelli Bice was in any way instigated or requested by the government.

24    In his motion, Whittemore makes much of the comments made by Attorney Pisanelli before

25   Judge Gonzalez that the materials were under "lock and key." However, the court finds that the

26   genesis of these comments was Attorney Wright's caution in complying with the Grand Jury

1    subpoenas and preserving evidence for the ongoing civil litigation rather than any actual

2    government directive. In fact, Attorney Pisanelli testified that he never received any instructions

3    from the government about preserving or retaining the 81 boxes of materials. *See e.g.,* Doc. #70,

4    Pisanelli Testimony, p.26 l:4-7; p.48 l:3-9; p.48 l:11-14 ("Q. In other words, no agent from the

5    government, FBI, [or] the U.S. Attorney's Office instructed you to make or retain a copy of the 81

6    boxes of documents? A. That is correct."). All of the instructions he received came from Attorney

7    Wright. *Id.* at p.26 l:4-7.

8         Similarly, Attorney Wright testified that he was the one who gave instructions to attorneys

9    at Pisanelli Bice. Doc. #70, Wright Testimony, p.115 l:22 - p.116 l:1 ("Q. Were those instructions

10   that you provided, were those instructions that the FBI gave you, or was that something that you

11   were doing due diligence as an attorney? A. I was doing it."); *see also*, p.120 l:23 - p.121 l:8 ("Q.

12   Were those instructions that you received from the FBI, or were those instructions that you gave in

13   your capacity . . . as an attorney representing [WNG]? A. Those were my instructions."). Further,

14   he testified that his directions were made out of an abundance of caution to make sure the firm

15   wasn't releasing any documents that had arguably been subpoenaed. *Id.* at p.168 l:11-16 ("I'm just

16   ultra cautious when I'm dealing with federal [Grand Jury] subpoenas . . . ."). Thus, the court finds

17   that none of Attorney Wright's instructions were the product of advice, suggestion, or request by

18   any government official, but were the product of his personal legal judgment in representing the

19   Seeno's and WNG's interests.

20        Moreover, Attorney Wright confirmed and reconfirmed throughout his testimony that the

21   government never made a request that anything be held or not released to Whittemore. *See*

22   Doc. #70, Wright Testimony, p.112 l:22 - p.113 l:6 ("Q. Did the FBI agents . . . instruct you to

23   instruct others to have those boxes moved to Pisanelli Bice, or any other location? A. No. Q. Did

24   they provide any instructions to you with respect to those boxes of documents to include whether –

25   how they should be kept or under what circumstances they should be disposed of? A. No."); p.120

26   l:23 - p.121 l:8 ("Q. Did you ever receive instructions from the FBI or the U.S. Attorney's Office,

1  or any agent of the law enforcement, about the disposition of these documents, anything in the way

2  of don't return those documents or make sure they don't leave the building or anything of that

3  nature? A. No, sir.").

4        Likewise, Special Agent French testified that she never made any requests or gave any

5  instructions concerning the 81 boxes of materials. Doc. #70, French Testimony, p.180 l:17 - p.181

6  l:1 ("Q. Now, in your initial dealings with Mr. Wright in November and December, when the

7  subpoena was issued, what instructions, if any, did you give him with respect to what should

8  happen to these 81 boxes of material? A. I didn't give him any instructions. Q. Are you aware of

9  any other agent of the FBI, or individual on behalf of the government, giving any instructions to

10  Mr. Wright or WNG about the disposition of those boxes? A. No."); p.189 l:20 - p.190 l:7 ("Q.

11  During the time when you were at Pisanelli Bice reviewing some of this material, did you tell Mr.

12  Pisanelli that they should not release any of the boxes to Mr. Whittemore? A. No. Q. Did you

13  instruct Mr. Wright, when you spoke to him briefly, that he should not allow the return of these

14  boxes? A. No. Q. Did you instruct anyone at Pisanelli Bice, or someone else associated with Mr.

15  Wright, not to return or how to handle these boxes? A. No."); p.198 l:7-16 ("Q. After this

16  production of the book in the political contributions folder, Special Agent French, did you then give

17  any instructions to Mr. Pisanelli or Mr. Wright about what to do with these boxes, either the ones

18  the material came from, or the 81 boxes, more generally? A. No. Q. Are you aware of anybody else

19  associated with the government providing any instruction to Pisanelli Bice or Mr. Wright about

20  what to do with this material? A. No.").

21        More importantly, the court finds that there was no official government involvement with

22  the Pisanelli Bice firm until after Attorney Wright contacted the FBI on his own initiative. Both

23  Attorney Wright and Special Agent French testified that Attorney Wright was the individual who

24  initiated contact with the FBI and invited them to review documents provided from the 81 boxes of

25  materials. *See* Doc. #70, Wright Testimony, p.102 l:11-13; French Testimony, p.172 l:18-23.

26  Further, Special Agent French's review of the materials was carefully controlled and presented by

Pisanelli Bice and her activities were confined to viewing the materials displayed and provided to her. Doc. #70, French Testimony, p. 175 l:25 - p.176 l:2; p.186 l:18-20 ("Q. And what happened when you got there? A. I was led to a room that contained a bunch of boxes and allowed to look through those materials.").

Therefore, based on the court's review of the evidence presented at the evidentiary hearing, the court finds that the underlying search of the 81 boxes of materials was a completely private search. Accordingly, the court finds that there has been no search within the meaning of the Fourth Amendment. *See Sherwin*, 539 F.2d at 6.

Additionally, the court finds that there has been no seizure within the meaning of the Fourth Amendment because all of the identified evidence was turned over to the government as a result of the Grand Jury subpoenas. *See United States v. Dionisio*, 410 U.S. 1, 9 (1973) (holding that compliance with a lawful Grand Jury subpoena is not a seizure for Fourth Amendment purposes). Accordingly, the court shall deny Whittemore's motion to suppress.

IT IS THEREFORE ORDERED that defendant's motion to suppress (Doc. #31) is DENIED.

IT IS SO ORDERED.

DATED this 18th day of April, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

9